IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WUHAN HEALTHGEN BIOTECHNOLOGY CORPORATION and HEALTHGEN BIOTECHNOLOGY CO., LTD., <br><br> Plaintiffs, <br><br> v. <br><br> EXPRESSTEC LLC, VENTRIA BIOSCIENCE INC., and INVITRIA, INC., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) C.A. No. 24-318 (RGA) |

**DEFENDANTS' LETTER TO THE HONORABLE RICHARD G. ANDREWS**
<u>**REGARDING PROTECTIVE ORDER DISPUTE**</u>

OF COUNSEL:

Scott R. Brown
Todd A. Gangel
HOVEY WILLIAMS LLP
10801 Mastin Boulevard, Suite 1000
84 Corporate Woods
Overland Park, KS  66210
(913) 647-9050

July 2, 2024

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Defendants*

Dear Judge Andrews:

Defendants ExpressTec LLC and InVitria, Inc. (f/k/a Ventria Bioscience, Inc.), collectively referred to as "InVitria," have largely agreed with Plaintiffs on the contents of a Protective Order to limit the dissemination of confidential documents, ESI, and other information exchanged in discovery. But as shown in Exhibit 1, the parties disagree about the levels of protection to be included in the Order.

Due to the highly sensitive, proprietary nature of the research and development in the industry and the history and degree of competition between the parties, InVitria respectfully requests that the Court enter a Protective Order that includes not only the standard "Confidential" and "Highly Confidential" levels of protection, but also a third "Special Handling" level that further limits the dissemination of the most sensitive information about the parties' research and development, product formulations, and methods—similar to the protections this Court extends to computer source code in appropriate cases.

**History of relations between InVitria and Plaintiffs**

InVitria is a pioneer and leader in the field of plant-based expression of recombinant proteins. InVitria has developed a product family of serum-free, animal-free products that improve the performance and safety of biologic drug manufacturing and final product formulation, without any of the ethical or zoonotic pathogen concerns of products derived from animal and human sources—such as fetal bovine serum, which is the most widely used growth supplement for cell-culture media. InVitria's recombinant human serum albumin ("rHSA") products have a wide variety of uses in medical research and treatment. (*See* D.I. 13 ¶¶ 12–17.)

InVitria has obtained patent protection for its many innovations in rHSA products. In its counterclaims, InVitria asserts that Plaintiffs' rHSA products infringe InVitria's U.S. Patent No. 11,492,389. (*Id.* ¶¶ 57–61.) InVitria has also sued Plaintiffs in the United States District Court for the District of Kansas for infringing two patents in the same family as the '389 patent. However, InVitria does not patent many of its internal R&D and manufacturing processes and procedures, but instead maintains as closely protected trade secrets. The patent claims asserted by Plaintiffs relate entirely to internal non-public processing practices.

From 1999 to 2005, InVitria employed Dr. Daichang Yang as a Postdoctoral Researcher, Senior Scientist, and Lab Director. Since he voluntarily left InVitria in 2005 to return to China, Dr. Yang has worked at Wuhan University of Technology and co-founded or controlled Chinese companies, including Plaintiffs. Under Dr. Yang's leadership, Plaintiffs have produced and sold rHSA products that the ITC has determined infringe a patent in the '389 patent family.

Dr. Yang and his associates have used proprietary information obtained from InVitria to commercialize technologies and file patent applications in China and the United States. In addition, Dr. Yang is part of the "Thousand Talents Plan," an effort by the Chinese central government to recruit Chinese citizens who were educated abroad in science and technology fields. Law-enforcement and counterintelligence agencies in the U.S. and other countries have raised concerns about the program as a vector for intellectual-property theft and espionage.

In 2018, the FBI announced criminal indictments against two Chinese rice researchers for stealing rice seeds from InVitria and another research facility during a U.S. visit. (*See* Exhibit 2.) Importantly, InVitria and Plaintiffs are essentially the only manufacturers of rice-derived rHSA in the world and are direct competitors.

In sum, InVitria is a verified victim of theft by a foreign actor. Moreover, Plaintiffs have built their rHSA business on the back of InVitria's proprietary technology and have targeted InVitria's customers through economically unrealistic pricing and other malicious practices.

**InVitria's proposed Special Handling category**

InVitria proposes that the Protective Order include a third, more stringent "Special Handling" designation for information such as formulations, proprietary manufacturing information and technology, product research and development records, and other information that the Producing Party in good faith believes would cause severe harm to the Producing Party or others' competitive position if disclosed. (Ex. 1 ¶ 6.)

Under InVitria's proposal, Special Handling Material would be provided to the Receiving Party only at the offices of the Producing Party's outside counsel of record on a stand-alone computer not connected to the Internet or any local network. (*Id.* ¶¶ 17.a–b.) Access would be limited to outside counsel of record and an outside consultant or expert—all of whom must be U.S. citizens and U.S. residents. (*Id.* ¶ 17.c.) Except as necessary to comply with the Court's rules, procedures, and orders, no electronic copies of Special Handling Material would be permitted without the Producing Party's written consent. (*Id.* ¶ 17.e.)

A limited number of printouts and photocopies on colored paper would be permitted, with a requirement that the Receiving Party maintain a log of all such copies. (*Id.* ¶ 17.f.) Copies of Special Handling Material kept by outside counsel or experts would be required to be stored in secured locked areas. (*Id.* ¶ 17.g.) Exhibits including Special Handling Material or pleadings quoting such exhibits would be required to be filed under seal and appropriately marked. (*Id.* ¶¶ 17.c–d.) And Special Handling Material could not be emailed or transmitted electronically over a network, except to the extent electronic service of pleadings is required, which would occur via encrypted FTP. (*Id.* ¶¶ 17.h.)

These Special Handling procedures will help ensure that the most sensitive information is not inadvertently disclosed to others who could benefit from its disclosure. Although InVitria does not believe Plaintiffs' outside U.S. counsel would knowingly disseminate protected information to Plaintiffs or other foreign competitors, the Special Handling procedures will ensure that bad actors in China have no opportunity to access InVitria's proprietary information by breaching Plaintiffs' attorneys' information-storage and security systems.

**Argument and Authority**

InVitria's proposed Special Handling restrictions are similar to and consistent with provisions this Court and others in the District have included in protective orders to limit the review and dissemination of computer source code. (*See, e.g.*, Exhibit 3, Protective Order, No. 11-770-RGA, at 12–21; Exhibit 4, Protective Order, No. 13-1835-RGA, at 15–21; Exhibit 5, Revised Protective Order, No. 18-366-WCB, at 14–17.)

Source code "requires additional protections to prevent improper disclosure because it is often a company's most sensitive and most valuable property." *Drone Techs., Inc. v. Parrot S.A.*, 838 F.3d 1283, 1300 n.13 (Fed. Cir. 2016). Although the exchange of *computer* source code is not implicated by the patents-in-suit in this case, information regarding InVitria's (and Plaintiffs') confidential, proprietary methods of developing and synthesizing rHSA products is the company's most sensitive and valuable property. Thus, InVitria's proposed additional protections to prevent the improper disclosure are appropriate.

During the negotiations that led to this dispute, Plaintiffs took particular issue with InVitria's proposal to limit review and possession of Special Handling material to citizens and residents of the United States. While Plaintiffs may attempt to paint this as xenophobia, InVitria's desire to prevent dissemination of its most sensitive proprietary information to non-U.S. citizens or residents is entirely rational, given the previous theft and misappropriation of its proprietary rHSA technology by Dr. Yang and other Chinese nationals. Moreover, by requiring U.S. citizenship and residency, this Court will have the power to issue orders that maintain control over the parties' most commercially sensitive information.

This Court has previously honored protective orders that prohibit foreign use and dissemination of highly confidential source-code materials. *E.g.*, *Via Vadis Controlling GmbH v. Skype, Inc.*, No. 12-193-RGA, 2013 WL 646236, at *3 (D. Del. Feb. 21, 2013). Such a restriction should be imposed here. Should either party later identify a particularized need for a non–U.S. citizen or resident to review or possess Special Handling material, the party should seek the opposing party's consent or, if necessary, relief from the Court.

**Remaining areas of disagreement**

Nearly all the differences between Plaintiffs' and InVitria's proposed Protective Order provisions relates to InVitria's Special Handling proposal. The only exceptions are the competing proposals in paragraph 16, "Disclosure." (Exhibit 1 at 11–12.) InVitria proposes that paragraph 16 simply list the categories of persons to whom Confidential Information may be disclosed. Plaintiffs propose additional language in paragraphs 16.a, b, and c that places restrictions on the activities of outside counsel of record, in-house attorneys, and party representatives, respectively.

This language is redundant to provisions in paragraphs 10–11, "Use." (*Id.* at 7–9.) Thus, it need not be included in identifying the individuals to whom Confidential information may be disclosed. Indeed, paragraph 11.d expressly provides that "[t]he restrictions in this paragraph apply only to individuals," not to firms or organizations. Accordingly, InVitria respectfully requests that the Protective Order include InVitria's proposed "Disclosure" provisions.

        Respectfully,

        */s/ Jeremy A. Tigan*

        Jeremy A. Tigan (#5239)

JAT:lo  
Enclosures  
cc: All Counsel of Record (via e-mail)